IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF | § | |
| THE EXTRADITION OF | § | No. 3:25-MJ-218-BW |
| FRANKLIN ALEXANDER CAMPBELL | § | |

## AMENDED MEMORANDUM OPINION AND ORDER

Before the Court is the government's March 6, 2025, Complaint seeking the extradition of Franklin Alexander Campbell to Ireland to answer criminal charges there.  (Dkt. No. 1 ("Compl."))  After considering the Complaint, exhibits admitted at a May 15, 2025 hearing, and the parties' argument in briefs and at that hearing, the Court **CERTIFIES** that Campbell may be extradited to Ireland and **DENIES** his request for release on bail.[1]

## I.  BACKGROUND

In its Complaint, the government avers that Respondent Franklin Alexander Campbell, holder of a Nigerian passport, is accused in the Republic of Ireland of one count of money laundering, in violation of § 7(1)(a)(ii), 7(l)(b), and 7(3) of the Irish Criminal Justice (Money Laundering and Terrorist Financing) Act of 2010.  (Compl. ¶¶ 4, 6(h).)  A court in Ireland issued a bench warrant for Campbell's arrest after he failed to appear there.  (*See* Compl. ¶ 5, Dkt. No. 13-1 at 130.)

---

[1] This Memorandum Opinion and Order amends and makes non-substantive changes to the Memorandum Opinion and Order entered on June 5, 2025.  (Dkt. No. 21.)

The charge in Ireland stems from a theft of money carried out through a fraudulent email scheme.  In March 2017, the Head of Finance ("HOF") at a software development company received two emails purporting to be from the company's Chief Executive Officer.  (Compl. ¶ 6(a).)  The emails directed the HOF to send €23,625 to a bank account held in the name of "Frankly Campbell."  (*Id.*)  The HOF made the transfer believing the emails were legitimate, but the company alerted Irish police—An Garda Siochana ("Garda")—about a week later when it discovered the emails were fraudulent.  (*Id.*)

Through its investigation, Garda found that the bank account that received the company funds belonged to Campbell.  (Compl. ¶ 6(b).)  Campbell was arrested on October 24, 2017 and booked at a police station in Cork City, Ireland.  (*Id.* ¶ 6(e).)  On May 8, 2018, the Director of Public Prosecution ("DPP") initiated charges against Campbell for money laundering.  (*Id.* ¶ 6(g).)  Campbell left Ireland on May 31, 2019 and was due to return on June 21, 2019, but he did not return.  (*Id.*)

The United States government filed its Complaint seeking Campbell's extradition on March 6, 2025, and the Court issued a warrant for his arrest.  (*See* Dkt. Nos. 1, 2.)  On March 12, Campbell appeared before the Court in custody, and the Court appointed Attorney James Joseph Mongaras to represent Campbell in these proceedings.  (Dkt. Nos. 4, 6.)  The Court also ordered that Campbell be detained until such time as Campbell files a motion for release and satisfies the requirements for release on bail in extradition proceedings.  (Dkt. No. 7.)

Pursuant to an agreed scheduling order, the government filed its memorandum in support of extradition on April 10.  (Dkt. No. 12 ("Memo.").)  On April 25, Campbell filed a brief in opposition to extradition and an incorporated motion for release on bail.  (Dkt. No. 15 ("Resp.").)  The government, on May 1, filed its reply in support of extradition and response to Campbell's request for bail.  (Dkt. No. 16 ("Reply").)  The Court held a hearing on May 15, 2025, at which it admitted as a sealed exhibit the extradition package compiled by the U.S. Department of Justice that included materials submitted by the Republic of Ireland.  (Dkt. No. 19.)

## II.  LEGAL STANDARDS

"Extradition is the 'surrender by one nation to another of an individual accused or convicted of an offense outside of its own territory, and within the territorial jurisdiction of the other' for prosecution or punishment."  *Matter of Extradition of Guardado*, No. 3:24-MJ-6-1, 2024 WL 5037017, at *1 (S.D. Tex. Nov. 19, 2024) (quoting *Terlinden v. Ames*, 184 U.S. 270, 289 (1902)).  Extradition proceedings are *sui generis*, neither criminal nor civil in nature.  *In re Extradition of Vargas*, 978 F. Supp. 2d 734, 744 (S.D. Tex. 2013).  Because extradition is primarily a function of the executive branch, courts have a limited role in the process.  *In re Extradition of Risner*, No. 3:18-MJ-765-BN, 2019 WL 6118377, at *4 (N.D. Tex. Nov. 18, 2019).

Extradition is provided for by 18 U.S.C. § 3184.  The Fifth Circuit has outlined its procedures this way:

> The substantive right of a foreign country to request the return of a
> fugitive and the duty of the United States to deliver the fugitive depends
> entirely on the existence of a treaty between the requesting nation and
> the United States. To invoke its right to extradite a fugitive, the
> requesting nation must submit its request to a state or federal court.
> The court determines whether the fugitive is subject to extradition and,
> if so, must order the fugitive's commitment and certify the supporting
> record to the Secretary of State. The decision to surrender the fugitive
> then rests in the discretion of the Secretary of State.

*In re United States*, 713 F.2d 105, 107–08 (5th Cir. 1983) (citations and footnotes omitted). The Court's role is to determine whether the person is extraditable; it is the Secretary of State's decision whether to actually extradite the person.

To certify that a person may be extradited, a court must determine that the following requirements have been met: (1) the presiding judicial officer has jurisdiction to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive named in the extradition request; (3) the applicable extradition treaty is in full force and effect; (4) the extradition treaty covers the offense for which extradition is sought; and (5) there is sufficient evidence to support a finding that the fugitive committed the offense for which extradition is requested. *See* 18 U.S.C. § 3184; *Guardado*, 2024 WL 5037017, at *2. A determination of the person's guilt or innocence is not part of assessing extraditability, *In re Extradition of Ismail*, No. 4:24-MJ-656-BP, 2025 WL 1043630, at *5 (N.D. Tex. Apr. 8, 2025) (citing *Collins v. Loisel*, 259 U.S. 309, 314-15 (1922)), nor is it generally the court's role to scrutinize the fairness of the requesting country's legal system, *see United States v. Kin-Hong*, 110 F.3d 103, 110 (3d Cir. 1997).

-4-

Bail is normally unavailable in extradition proceedings. *See Wright v. Henkel*, 190 U.S. 40, 63 (1903). A federal court may, however, set bail for an extradition respondent in certain limited circumstances. *See United States v. Ramnath*, 533 F. Supp. 2d 662, 665 (E.D. Tex. 2008). In contrast to domestic criminal proceedings, "there is no presumption favoring bail" in extradition proceedings, *Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986) (quoting *Beaulieu v. Hartigan*, 554 F.2d 1, 2 (1st Cir. 1977)). In fact, "[t]he reverse is true." *Id.* (quoting *Beaulieu*, 554 F.2d at 2).

Courts considering whether to release a respondent during extradition proceedings consider whether the respondent satisfies two requirements. *See in re Extradition of Garcia*, 761 F. Supp. 2d 468, 474 (S.D. Tex. 2010) ("There is general agreement that the potential extraditee bears the burden of establishing a bond is warranted."). The respondent must first establish that he is "neither a risk of flight nor a danger to any person or the community." *Ramnath*, 533 F. Supp. 2d at 665. This is akin to the burden established by 18 U.S.C. § 3143(a)(1) and imposed on domestic criminal defendants who have been convicted and are awaiting sentencing. *Id.* at 666. An additional—not alternative—requirement is that the respondent must show "a special circumstance or a combination of factors that, in the aggregate, constitute a special circumstance that creates a compelling case for release on bail." *Id.* Satisfying this second requirement is not easy, as "special circumstances are rare." *Id.*

Of the courts that clearly state the burden of persuasion borne by the extradition respondent, most require him to establish his eligibility for bail by a clear-and-convincing standard. *See, e.g.*, *In re Extradition of Mitchell*, 625 F. Supp. 3d 481, 500 (N.D. W. Va. 2022); *Ramnath*, 533 F. Supp. 2d at 665. There is, however, "a negligible minority of courts that have adopted a preponderance of the evidence standard." *Garcia*, 761 F. Supp. 2d at 474-75.

### III.  ANALYSIS

**A.    The Court certifies that Campbell may be extradited.**

The government has established each of the requirements necessary for the Court to certify Campbell's extraditability. First, this Court is granted jurisdiction by federal statute to conduct extradition proceedings. 18 U.S.C. § 3184 (providing that extradition proceedings may be conducted by "any magistrate judge authorized so to do by a court of the United States"); *Garcia*, 825 F. Supp. 2d at 827. Second, Campbell was found in the Northern District of Texas, and this Court has jurisdiction over a fugitive found within its jurisdictional boundaries. *See* 18 U.S.C. § 3184 (referring to "any person found within his jurisdiction"); *Garcia*, 825 F. Supp. 2d at 827. Third, an Attorney Advisor in the Office of the Legal Adviser for the Department of State states under oath that the relevant provisions of the Treaty on Extradition between the United States and Ireland signed July 13, 1983 are in full force and effect. (Dkt. No. 13-1 at 1-2.) Fourth, the offense for which Ireland requests Campbell's extradition is an extraditable offense under the treaty. (*Id.*)

-6-

Campbell expressly notes that he does not contest any of these four requirements.
(Resp. at 1.)

### 1. The information submitted by Ireland establishes probable cause to believe Campbell committed money laundering.

Campbell's challenge to certification centers on the sufficiency of Ireland's
extradition packet in establishing probable cause to believe Campbell committed
money laundering under § 7(1) of the Criminal Justice (Money Laundering and
Terrorist Financing) Act, 2010.  That statue provides that:

A person commits an offence if—

(a)    the person engages in any of the following acts in relation to
property that is the proceeds of criminal conduct:

(i)    concealing or disguising the true nature, source, location,
disposition, movement or ownership of the property, or
any rights relating to the property;

(ii)    converting, transferring, handling, acquiring, possessing or
using the property;

(iii)    removing the property from, or bringing the property into,
the State,

and

(b)    the person knows or believes (or is reckless as to whether or not)
the property is the proceeds of criminal conduct.

(Dkt. No. 13-1 at 46-47.)  Campbell does not contest the sufficiency of evidence
establishing probable cause that the proceeds transferred into his bank account were
proceeds of criminal conduct.  (*See* Resp. at 3.)  His challenge focuses on the
sufficiency of the evidence establishing probable cause to believe he knew—or was

reckless as to whether—the money in his account was proceeds of criminal conduct. (*See id.* at 3-4.)

The probable cause standard applied in extradition proceedings is the familiar standard the Court applies to domestic criminal proceedings under the Fourth Amendment.  *See Garcia*, 825 F. Supp. 2d at 828; *Ramnath*, 533 F. Supp. 2d at 679. Proof compelling enough to support conviction is not necessary; "[r]ather, 'probable cause' is the existence of reasonable grounds to believe the accused committed the charged offense." *Garcia*, 825 F. Supp. 2d at 828.  "The law thus requires evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Id.*  "In making this determination, courts apply a totality of the circumstances analysis and make a practical, common sense decision whether, given all the circumstances, there is a fair probability that the defendant committed the crime." *Id.* (quoting *In re Rodriguez Ortiz*, 444 F. Supp. 2d 876, 884 (N.D. Ill. 2006)).

The extradition packet from Ireland provides details learned from the criminal investigation.  That investigation showed that, on March 23, 2017, the victim company transferred €23,625 into Campbell's bank account.  (Dkt. No. 13-1 at 29.) The evidence that Campbell owned the account is undisputed, as records show it was tied to Campbell's address, and Campbell admitted that he opened the account using his passport.  (*Id.*)  Additionally, CCTV captured Campbell withdrawing €1,000 from that account the following day.  (Dkt. No. 13-1 at 142.)  Investigation also showed that, after receiving the €23,265 transfer, there were two outgoing transfers of €5,000

each—one on March 24 and the other on March 25—from his account to a bank account held by "A.A."—a person known to Irish authorities. (*See id.* at 142-44.) On March 27, Campbell also transferred €5,000 to another bank account held by Campbell. (Dkt. No. 13-1 at 144.) Garda has not identified any other person who had access to Campbell's account. (*Id.*) Ireland acknowledges that the amount of the transfers to A.A. is the maximum that could be transferred in one day and does not signify any type of structuring or attempt by Campbell or A.A. to avoid reporting requirements or otherwise evade government detection of the transfers. (*Id.* at 144.) In an interview with Irish authorities, A.A. acknowledged that the account into which funds were transferred were his, and he made concessions that the funds were stolen. (*Id.* at 143.)

The extradition packet also establishes the condition of Campbell's account aside from the transfer of stolen funds. In a Garda interview, Campbell reported that, around March 2017, his salary was paid into his account—the same account into which the stolen funds were deposited. (*Id.* at 142-43.) On February 27, 2017, his employer deposited his salary of €1,496.33. (*Id.* at 143.) It deposited a salary of €1,757.82 the following month, on March 27. (*Id.*) Prior to the February deposit of his salary, Campbell's account was overdrawn in the amount of €509.95, and it was overdrawn most of 2017 prior to closure of the account in April 2017. (*Id.* at 143, 145.)

Campbell argues against probable cause by pointing to what the evidence does not show: there is no evidence that Campbell sent the fraudulent email, no evidence

showing a relationship between Campbell and A.A. beyond the two transfers to A.A.'s account; and no direct evidence showing that Campbell is the person who transferred the money from his account to A.A.'s account. (*See* Resp. at 3-4.) In Campbell's view, the evidence shows only that money was transferred into his account, and that is insufficient to establish that he knew or was reckless with respect to whether the funds were proceeds from criminal activity. (*See* Resp. at 4.)

Under a totality of the circumstances, the Court concludes that the information submitted by Ireland establishes probable cause to believe Campbell committed money laundering. The evidence submitted shows that Campbell's bank account was consistently overdrawn in 2017. Campbell earned approximately €1,500 on average per month from his employment, and his salary was deposited into that account. The bank account was overdrawn by about €500 when, on March 23, 2017, an amount equal to more than a year's salary came into the account. Within two days of receiving that sizeable amount, Campbell transferred €10,000 to another person—a man who acknowledged to Irish authorities that the funds were stolen. A couple of days later, Campbell withdrew €1,000 and transferred €5,000 to another account. The substantial amount of the deposit, the absence of anything suggesting Campbell had a relationship with the victim company or otherwise had grounds to believe the windfall deposit was legitimate, the timing of Campbell's transfers depleting a substantial portion of the funds, and the apparent coordination with A.A. evidenced by the repeated transfers, when considered together, create probable cause to believe Campbell knew or at least was reckless with respect to

-10-

whether the transfers to A.A.'s account involved proceeds of criminal conduct. *Cf.*
*United States v. Townsend*, 720 F. App'x 976, 979-80 (11th Cir. 2017) (finding evidence
sufficient to support money-laundering conviction based in part on timing of money
transfers).

### 2. Campbell cannot prevent certification by raising questions about whether Ireland is prosecuting him on discriminatory grounds.

Campbell also contests his eligibility for extradition under Article IV of the
treaty between the United States and Ireland. That provision states that
"[e]xtradition shall not be granted . . . when there are substantial grounds for
believing that a request for extradition for an ordinary criminal offence has been
made for the purpose of prosecuting or punishing a person on account of that
person's race, religion, nationality or political opinion." Art. IV(c) (Dkt. No 13-1 at
11).

Campbell's argument does not provide grounds for this Court to deny
certifying that he is extraditable. Article IV(c) states with respect to this exception to
extradition that "[u]nless the law of the Requested State otherwise provides,
decisions under this paragraph shall be made by the executive authority[.]" (Dkt.
No. 13-1 at 11.) Campbell has not shown that Irish law states otherwise, and in the
absence of such authority, the plain language of the treaty provides that it is not the
Court's role to determine applicability of this exception. Rather, the treaty reserves
that for the executive authority.

Even if the Court was authorized to apply this exception, Campbell fails to meet it.  He suggests that certain facts surrounding his prosecution could support an inference that Ireland is prosecuting Campbell—a Nigerian citizen—based on his race or nationality.  (Resp. at 4.)  Campbell believes such an inference is supported by what he considers the "weak[ness]" of evidence of his guilt, his previous release on his own recognizance in Ireland, the slow movement of his case through the Irish court system, and the "very small amount of money" involved in his case.  (Resp. at 4; Hrg. Tr. at 22.)  Additionally, Campbell states that, prior to the events underlying the prosecution, he applied for Irish citizenship and was denied.  (Hrg. Tr. at 22.)  All of these facts together, he contends, "raise[] questions" about whether he is being prosecuted because of his race or Nigerian nationality.  (*See* Hrg. Tr. at 23.)  But Campbell must do more than "raise questions" about Ireland's motivations for prosecuting him; the treaty exception requires "substantial grounds."  *See* Art. IV(c).  Campbell admittedly falls short of meeting that standard.  (*See* Hrg. Tr. at 23-24.)

**B.    Assuming Campbell can be released on bail after having been certified as extraditable, he has failed to establish eligibility for bail.**

Assuming the Court may release Campbell on bail after having found that he is extraditable,[2] the Court concludes that he has not overcome the presumption against bail.  Specifically, Campbell fails to establish that he is not a flight risk, nor does he show special circumstances justifying bail here.

---

[2] *See In re Extradition of Manrique*, No. 19-MJ-71055-MAG-1 (TSH), 2021 WL 5037680 (N.D. Cal. Oct. 29, 2021).

### 1.  Campbell has not satisfied his burden to show he is a low risk of flight.

As discussed above, to be eligible for release pending extradition, Campbell must first show that, if released, he would be unlikely to flee or pose a danger to the community.  *Ramnath*, 533 F. Supp. at 666.  Although the Bail Reform Act does not apply to extradition proceedings, courts often find its framework helpful in these circumstances for its consideration of flight risk and dangerousness.  *See Garcia*, 761 F. Supp. 2d at 475 & n.9; *Ramnath*, 533 F. Supp. 2d at 667.  Most courts require a respondent to satisfy a clear-and-convincing standard, *see Ramnath*, 533 F. Supp. 2d at 665, and the Court concludes that this burden—compared to the lower preponderance burden—is faithful to the common recognition that the "standard for release on bail for persons involved in extradition proceedings is a more demanding standard than that for ordinary accused criminals awaiting trial."  *Russell*, 647 F. Supp. at 1048 (quoting *Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920 (2d Cir. 1981)).

Campbell does not establish by clear and convincing evidence that he is not a flight risk.  He argues that the presence of his family—including a newborn daughter—and his pending efforts to become a U.S. citizen anchor him to this community and minimize any risk that he would flee.  He also questions whether the materials from Ireland show that he was told when to appear in court there, suggesting that he has not purposefully made himself unavailable for court proceedings there.  Campbell believes a low risk of flight is further shown by the fact that he traveled to the United States legally with the knowledge of Irish authorities

-13-

and that he is currently in the process to obtain U.S. citizenship. The picture Campbell portrays is one in which he did not actively flee from charges in Ireland, but instead travelled here legally, remained here after meeting his wife, and lived in this country in the open for years unaware that he was wanted in Ireland.

The Court does not credit Campbell's account, in part because there is no basis upon which it would have been reasonable for him to believe when he left Ireland that the prosecution against him had ended. Campbell knew when he left Ireland that he was charged with a serious crime there. Whether he left Ireland with the conscious goal of escaping or frustrating his prosecution or instead with an initial intent to return that dissipated once he found what he considered compelling reasons to stay in the United States, it is apparent that Campbell would have known that he was subject to prosecution in Ireland. But he chose to remain here.

Even if the Court accepted Campbell's portrayal, it still would conclude that he fails to establish by clear and convincing evidence that is a low risk of flight. Campbell entered the United States on a visitor visa and knowingly overstayed his visa. Campbell's disregard for immigration statutes undermines his effort to persuade the Court that he would comply with conditions this Court might set to ensure his appearance as directed or that he would travel to Ireland of his own volition to face prosecution there.

      **2.    Campbell has not shown special circumstances warranting release.**

Campbell's failure to show that he is not a flight risk is sufficient to deny release on bail. *See Guardado*, 2024 WL 4442035, at *2 ("Special circumstances and

-14-

no flight risk/danger are both prerequisites to establishing entitlement to bail in an extradition case[.]"). Nonetheless, the Court also considers whether Campbell has shown special circumstances creating a compelling case for bail.

Courts have not reached consensus on a defined and limited universe of characteristics accepted as "special circumstances." *See Garcia*, 761 F. Supp. 2d at 471. Campbell urges the Court to assess special circumstances by reference to conditions and statuses identified in *Ramnath*, 533 F. Supp. 2d at 666.[3] In his brief, Campbell argues special circumstances based on the following: (1) the recent birth of his daughter and the need to help care for her when his wife returns to work; (2) his medical issues, which include hypertension, type-2 diabetes, and an enlarged liver; (3) the availability of bail in Ireland; (4) the likelihood of being found non-extraditable; and (5) the likelihood that Campbell will avoid conviction in Ireland. (Resp. at 8-13.) Although Campbell does not strongly aver that any of these considerations is sufficient alone to constitute special circumstances, he asserts that, considered in their totality, they meet the demanding standard to justify bail. (*See* Resp. at 7-10; Hrg. Tr. at 33.)

The Court concludes that the circumstances upon which Campbell relies do not—either in isolation or in their totality—amount to "most extraordinary

---

[3] In *Ramnath*, the court identified the following as potential bases for meeting the "rigorous" test for special circumstances: (1) length of proceedings and detention; (2) need to consult with counsel; (3) respondent's health; (4) respondent's age; (5) availability of bail to respondent in the requesting state or state of arrest; (6) likelihood of respondent being found non-extraditable; (7) likelihood of success in action in the requesting state; and (8) deprivation of religious practices while incarcerated. 533 F. Supp. 2d at 666.

-15-

circumstances" warranting bail. *See Garcia*, 761 F. Supp. 2d at 472. The likelihood that Campbell will be found non-extraditable is now moot, and after considering the facts submitted by Ireland, the Court is not persuaded to weigh the likelihood of success on the charges significantly in favor of bail. Campbell's medical conditions appear to be among the types that are regularly encountered and treated in incarcerated populations. These conditions and the unfortunate strain that detention puts on Campbell's family appear to be generally applicable to all potential extraditees, *see id.*, and they do not aggregate to form a need for bail that is so compelling as to justify jeopardizing the United States's obligation to deliver Campbell to the requesting nation, *see In re Extradition of Lui*, 913 F. Supp. 50, 52-53 (D. Mass. 1996) ("[S]ubject to limited exceptions, the United States has a solemn obligation to honor the lawful requests of its treaty partners to deliver to them accused persons found within its jurisdiction.").

Campbell's cited authority discussing the availability of bail does not lead the Court to collectively weigh that consideration in his favor. (*See* Resp. at 10 (citing *Ramnath*, 533 F. Supp. 2d at 675; *In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 736 (W.D. La. 1999); *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1221 (D. Nev. 1993)).) The court in *Nacif-Borge* concluded that the availability of bail in the requesting country was a special circumstance warranting bail (absent risk of flight). *See Nacif-Borge*, 829 F. Supp. at 1221 ("The availability of bail under the law of Mexico entitles Nacif to bail pending extradition if he is not a risk of flight or danger to others."). But that conclusion is not shared by a consensus of courts, and it has

-16-

been expressly rejected by several, including in its own district, *see In re Extradition of Siegmund*, 887 F. Supp. 1383, 1386 (D. Nev. 1995), and elsewhere, *see, e.g.*, *In re Extradition of Rouvier*, 839 F. Supp. 537, 540 (N.D. Ill. 1993). In view of courts' general recognition that special circumstances are "rare" or that bail should be considered only in "the most pressing circumstances," *Guardado*, 2024 WL 4442035, at *2 (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (emphasis omitted)), the mere availability of bail in the requesting country does not strike this Court as so unusual or compelling a circumstance alone as to make "the requirements of justice . . . absolutely peremptory." *Mitchell*, 171 F. at 289. Additionally, even if—as the record might suggest (*see* Dkt. No. 13-1 at 150)—Campbell was once eligible for bail in Ireland before making himself unavailable there, he has not shown that he would be eligible now under the facts as they currently exist. *Cf. Ramnath*, 533 F. Supp. 2d at 666-67 (declining to "assume" in the absence of evidence that the respondent would receive bail, even if generally defendants charged with the offense in the requesting country routinely receive bail).

Campbell supplemented his argument for bail at the hearing by additionally contending that release is necessary to allow him to consult with counsel. (*See* Hrg. Tr. at 31-32.) Some courts have declined to consider this a special circumstance. *See, e.g.*, *In re Extradition of Smyth*, 976 F.2d 1535, 1535 (9th Cir. 1992). Even considering it among the multiple circumstances that Campbell advances, a generalized need to consult counsel does not move the needle toward warranting release. Campbell makes no particularized showing with respect to any legal or

-17-

factual issue that counsel is unable to adequately pursue absent Campbell's release. *Cf. In re Extradition of Russell*, 805 F.2d 1215, 1217 (5th Cir. 1986) (rejecting contention that release was warranted to consult with counsel about extradition matter and pending civil litigation).  Additionally, Campbell's argument here is centered on his consultation with counsel in Ireland and the difficulties inherent in international communication across several time zones and the limited availability of technology in a jail setting.  Such issues are germane to practically any extradition respondent and do not appear to constitute special circumstances.

## IV.  CONCLUSION

The Court **CERTIFIES** that Franklin Alexander Campbell is extraditable to Ireland on the charge of money laundering.  The United States Attorney shall **FORWARD** a copy of this Memorandum Opinion and Order, together with a copy of all evidence admitted and testimony taken at the extradition hearing on May 15, 2025, to the Secretary of State.  Campbell is **COMMITTED** to the custody of the United States Marshal pending a decision on extradition by the Secretary of State pursuant to 18 U.S.C. § 3186.

**SO ORDERED** on June 19, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE